**UNIVERSITY OF TEXAS AT ARLINGTON, Petitioner,**

v.

**Sandra WILLIAMS and Steve Williams, Respondents**

No. 13–0338

Supreme Court of Texas.

Argued October 9, 2014

Opinion Delivered: March 20, 2015

& REM. CODE §§ 75.001.007 (the recreational use statute). When applicable, the statute effectively immunizes the landowner or occupant from ordinary negligence claims associated with the property's recreational use by requiring the plaintiff to establish gross negligence. *See id.* § 75.002(c)-(d), (f). The statute, however, only applies to certain recreational uses that it defines through a list of activities it considers to be "recreation." *Id.* § 75.001(3).

The question here is whether the statute's recreational-activity list reasonably includes a spectator at a competitive-sports event. The court of appeals concluded that this activity was too dissimilar to the others on the list to be included and accordingly held it was not "recreation" under the statute. 455 S.W.3d 640, 645 (Tex.App.–Fort Worth 2013) (mem.op.). We agree. Although members of this Court have different views on the nature of the injury-producing activity in this case, we agree that the recreational use statute does not bar the underlying action. The court of appeals' judgment is accordingly affirmed.

Laura F. Mueller, Austin, for Amicus Curiae Texas City Attorneys Association, Texas Municipal League.

Arthur Cleveland D'Andrea, Assistant Solicitor General, Daniel T. Hodge, First Asst. Attorney General, Dustin Mark Howell, Greg W. Abbott, Attorney General of Texas, Jonathan F. Mitchell, Solicitor General, Kevin Desiderio Molina, Office of the Attorney General of Texas, Austin, for Petitioner University of Texas at Arlington.

Christopher J. Harris, David Lee Cook, Kimberly Fitzpatrick, Harris Cook LLP, Arlington, for Respondents Sandra Williams, Steve Williams.

Justice Devine announced the judgment of the Court and delivered an opinion, in which Chief Justice Hecht, Justice Green, and Justice Lehrmann joined.

The recreational use statute provides limited protection to landowners and occupants who open their property for public recreational purposes. *See* TEX. CIV. PRAC.

I

Sandra Williams and her husband sued the University of Texas at Arlington (UTA) for injuries Williams sustained when she fell at Maverick Stadium. The stadium is a 12,500 seat, multipurpose facility located on the western edge of the UTA campus. It served as UTA's football stadium through the 1985 season, after which the university gave up its football program. The stadium is now used by the university's track-and-field teams and is also leased to the Arlington Independent School District for football games and other events. The Williamses were at the stadium to watch their daughter's high school soccer game.

After the game, Williams walked down the stadium stairs to wait for her daughter, stopping at a guard rail that separates the stands from the playing field. The stands are elevated above the field, but a gate in the railing provides access to the field when portable stairs are in place. On this occasion, the stairs were not there, and the gate was closed.

The gate's latch had previously broken off, but the gate was secured with a chain and padlock. While waiting for her daughter, Williams leaned against this gate, which unexpectedly opened. Williams fell five feet to the artificial-turf field below, injuring a rib and her left arm.

In her premises liability suit against the university, Williams alleged that UTA was negligent and grossly negligent in securing the gate with a chain and lock it knew to be inadequate, and in failing to maintain the gate and repair its broken latch. UTA responded with a general denial, a plea to the jurisdiction, and a motion to dismiss, asserting sovereign immunity and the recreational use statute. *See* Tex. Civ. Prac. & Rem. Code §§ 75.003(G), 101.058 (providing that to the extent the recreational use statute applies, it controls over the Tort Claims Act).

Williams argued that the recreational use statute did not apply because she was not engaged in a recreational activity at the time of the accident. In the alternative, she argued that, if the statute applied, UTA's plea and motion to dismiss should still be denied because she had raised a fact question regarding UTA's gross negligence. When applicable, the recreational use statute limits the liability of landowners by requiring proof of their gross negligence, malicious intent, or bad faith in the premises liability case. Tex. Civ. Prac. & Rem. Code § 75.002(d).

The trial court denied UTA's plea and motion, apparently agreeing with Williams' arguments. The court of appeals affirmed. 455 S.W.3d 640. UTA appealed. We granted UTA's petition to consider whether attending a soccer game as a spectator is a recreational activity under the recreational use statute.

## II

We begin, however, with our own jurisdiction, which is limited when the appeal is from an interlocutory order, such as the trial court's order here denying UTA's plea to the jurisdiction. UTA, a state university, argues that we have jurisdiction under section 51.014(a)(8) of the Civil Practice and Remedies Code, which authorizes an interlocutory appeal from the grant or denial of "a plea to the jurisdiction by a governmental unit" such as UTA. Interlocutory appeals, however, are generally final in the court of appeals unless there is a dissent in that court or a conflict with another decision. *See Stephen F. Austin State Univ. v. Flynn,* 228 S.W.3d 653, 656 (Tex.2007); see also Tex. Gov't Code §§ 22.001(a)(2), 22.225(b)(3), (c).

UTA argues that the court of appeals' decision here conflicts with one of our prior decisions. *See City of Bellmead v. Torres,* 89 S.W.3d 611 (Tex.2002). In *City of Bellmead,* we concluded that the recreational use statute applied to the user of playground equipment in a city park because the activity was of a type that the Legislature intended to include as recreation. *Id.* at 615. UTA argues that the users of stadiums and sports fields are similarly engaged in recreation under the statute and that the court of appeals' determination to the contrary is in conflict with *City of Bellmead.* UTA further points out that the court of appeals' decision here conflicts with another court of appeals' decision, which applied the recreational use statute to a spectator at a baseball game. *See Sam Houston State*

*Univ. v. Anderson,* No. 10–07–00403–CV, 2008 WL 4901233, at *3 (Tex.App.–Waco Nov. 12, 2008, no pet.) (mem.op.) (concluding that statute applied to a spectator whose arm was broken when the bleachers collapsed during a baseball game).

Decisions conflict when there is an "inconsistency in [the] respective decisions that should be clarified to remove unnecessary uncertainty in the law and unfairness to litigants." TEX. GOV'T CODE § 22.225(e). The conflict here satisfies that definition and thus supports our jurisdiction. We turn then to the recreational use statute and the question presented: whether a spectator at a competitive-sports event is engaged in "recreation" under the recreational use statute.

### III

 The recreational use statute protects landowners who open property for recreational purposes, limiting their liability to the recreational user. *State v. Shumake,* 199 S.W.3d 279, 284 (Tex.2006). The statute accomplishes this by elevating the burden of proof in premises liability cases in which it applies. *See Stephen F. Austin State Univ.,* 228 S.W.3d at 659 (noting that the statute "effectively requires ... either gross negligence or an intent to injure"). The statute, however, only applies to recreational uses, which the statute defines through a non-exclusive list of included activities. Under the statute,

"Recreation" means an activity such as:

 (A) hunting;

 (B) fishing;

 (C) swimming;

 (D) boating;

 (E) camping;

 (F) picnicking;

 (G) hiking;

 (H) pleasure driving, including off-road motorcycling and off-road automo-bile driving and the use of all-terrain vehicles;

 (I) nature study, including bird-watching;

 (J) cave exploration;

 (K) waterskiing and other water sports;

 (L) any other activity associated with enjoying nature or the outdoors;

 (M) bicycling and mountain biking;

 (N) disc golf;

 (O) on-leash and off-leash walking of dogs; or

 (P) radio control flying and related activities.

TEX. CIV. PRAC. & REM. CODE § 75.001(3) (emphasis added).

The issue in this case is whether the statutory term "recreation" reasonably includes competitive sports and their spectators. We did not answer that question in *City of Bellmead v. Torres.* See 89 S.W.3d at 614 (declining to decide whether "softball is ... recreation within the meaning of the Statute"). We did, however, apply subpart (L) in that case to enlarge the statutory list to include an omitted activity. *Id.* at 615. Because competitive team sports—like soccer—and spectating are also omitted from the recreational-activities list, the focus again is on subpart (L)'s *"any other activity associated with enjoying nature or the outdoors."*

As mentioned, we did not decide whether playing or watching softball was "recreation" in *City of Bellmead.* The court of appeals there, however, considered the issue and decided it was not under the statute. *Torres v. City of Bellmead,* 40 S.W.3d 662, 664–65 (Tex.App.–Waco 2001), *rev'd on other grounds,* 89 S.W.3d 611 (Tex.2002). Although Torres had gone to the city's softball complex to play softball, we declined to consider her purpose for

entering the park, reasoning that her purpose for entry did not control the statute's application. *City of Bellmead,* 89 S.W.3d at 614. Instead of softball, we focused on Torres' use of a swing set in the park because that was the activity that led to her injury. *Id.* In reversing the court of appeals, we reasoned that the use of playground equipment, although not specifically included in the statutory list as a recreational activity, was nevertheless covered as "the type of activity 'associated with enjoying . . . the outdoors'" under subpart (L). *Id.* at 615 (quoting TEX. CIV. PRAC. & REM. CODE § 75.001(3)(L)).

UTA argues that Williams was also engaged in recreation at the time of her accident because her attendance at the soccer game was similarly an "activity associated with enjoying nature or the outdoors." TEX. CIV. PRAC. & REM. CODE § 75.001(3)(L). UTA describes subpart (L) as a "broad catchall provision" sufficient to include spectators in stadiums who watch competitive-sports events.

Williams responds that subpart (L) is not so broad. She argues that the meaning of "any other activity associated with enjoying nature or the outdoors" is informed by the other listed activities and that none of these are similar to watching competitive sports at a large, multipurpose stadium. Underpinning Williams' argument is the principle of *ejusdem generis.*

■ That principle is a familiar canon of statutory construction, which provides that general terms and phrases should be limited to matters similar in type to those specifically enumerated. *City of Houston v. Bates,* 406 S.W.3d 539, 545 (Tex.2013); *see also Hilco Elec. Coop. v. Midlothian Butane Gas Co.,* 111 S.W.3d 75, 81 (Tex.

2003) (noting that "when words of a general nature are used in connection with the designation of particular objects or classes of persons or things, the meaning of the general words will be restricted to the particular designation"). In a similar vein, we have noted that context is fundamental to understanding the use of language and that meaning cannot ordinarily be drawn from isolated words or phrases but must typically be determined from statutory context. *TGS–NOPEC Geophysical Co. v. Combs,* 340 S.W.3d 432, 439 (Tex.2011).

■ We are also "typically inclined to apply a term's common meaning [unless] a contrary intention is apparent from the statute's context." *Bates,* 406 S.W.3d at 544. Were we to apply recreation's ordinary meaning here, we would unquestionably include competitive team sports and spectators within its scope. *See, e.g.,* WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 985 (1984) (defining "recreation" generally as refreshment from work or a diversion; in other words, something done to relax or have fun). But the Legislature did not provide that the statute was to cover recreation generally but rather defined the term through section 75.001(3)'s list of included activities. And although the Legislature has broadened the statute's reach over the years, it has not made it generally applicable to all refreshing, relaxing, or enjoyable activities. "Recreation" under the statute has remained more specific than the word's ordinary meaning.

When first enacted in 1965, the Legislature limited the statute to hunting, fishing, or camping on private property.[1] Over the last fifty years, the Legislature has added to the recreational-activities list, but as a class these activities have generally remained consistent. For example, the list

---

1. *See* Act of May 29, 1965, 59th Leg., R.S., ch. 677, § 1, 1965 Tex. Gen. Laws 1551 (protecting "any owner, lessee or occupant of real property giv[ing] permission to another to enter the premises for purposes of hunting, fishing and/or camping").

was enlarged in 1981 to include "activities such as hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing and water sports."[2] An accompanying bill analysis explained that the statute's "original purpose" had been "to keep private land open for hunting, fishing, and camping" but that "many other recreational activities [had] gained popularity" since the law's original enactment, "such as water skiing and cross-country hiking, which require wide open spaces or lakes and streams that may not be available in public parks or preserves near urban centers."[3] The analysis concluded that expanding the list of activities "would encourage owners to open more land for such uses."[4]

For the next fifteen years, the recreational-activities list remained relatively unchanged. During this period, the statute was recodified as chapter 75 of the Civil Practice and Remedies Code,[5] and in 1995 it was amended to extend its protection to publicly held land.[6]

What UTA refers to as the "catchall" provision was added in 1997.[7] The recreational-activities list was amended that year to include "bird watching and any other activity associated with enjoying nature or the outdoors."[8] Bird-watching was added to subpart (I)'s nature-study provision, while the "catchall" was added at the list's end as subpart (L). See TEX. CIV. PRAC. & REM. CODE § 75.001(3)(I), (L). In 2005, more activities were added.[9] Bicycling and mountain biking, disc golf, and dog walking joined the list, following the "catchall" provision as subparts (M), (N), and (O). See *id.* § 75.001(3)(M)-(O). Off-road motorcycling, off-road automobile driving, and the use of all-terrain vehicles were also added that year, grouped together with an existing subpart that identified pleasure driving as a recreational activity. See *id.* § 75.001(3)(H). Two years later, radio controlled flying and related activities were added.[10] See *id.* § 75.001(3)(P).

JUSTICE JOHNSON argues that the 1997 amendments, which added both bird-watching and the catchall provision to the statute's recreational-activities list, enlarged the statute's reach to outdoor sports and spectating because each is an "*activity associated with enjoying nature or the outdoors.*" 459 S.W.3d at 66 (Johnson, J., concurring and dissenting) (quoting TEX. CIV. PRAC. & REM. CODE § 75.001(3)(L)). This amendment, according to JUSTICE JOHNSON's writing, expanded statutory "recreation" to include enjoyable outdoor activities, irrespective of their connection to the more specific activities listed in the statute. Principles of *ejusdem generis*, however, counsel that a general or

---

2. *See* Act of May 30, 1981, 67th Leg., R.S., ch. 349, § 2, sec. 6(b), 1981 Tex. Gen. Laws 934.

3. House Study Group, Bill Analysis, Tex. H.B. 749, 67th Leg., R.S. (1981).

4. *Id.*

5. Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, sec. 75.001–.003, 1985 Tex. Gen. Laws 3242, 3299.

6. Act of May 26, 1995, 74th Leg., R.S., ch. 520, § 2, 1995 Tex. Gen. Laws 3276; *see also* TEX. CIV. PRAC. & REM. CODE § 75.003(e) (noting chapter 75's general application to the government); *Shumake*, 199 S.W.3d at 284 (noting statute's application to both public and private land).

7. Act of April 24, 1997, 75th Leg., R.S., ch. 56, § 1, 1997 Tex. Gen. Laws 123, 124.

8. *See* House Comm. on Civil Practices, Bill Analysis, Tex. H.B. 2664, 75th Leg., R.S. (1997).

9. Act of May 27, 2005, 79th Leg., R.S., ch. 932, § 1, 2005 Tex. Gen. Laws 3178.

10. Act of May 23, 2007, 80th Leg., R.S., ch. 659, § 1, 2007 Tex. Gen. Laws 1235.

broad provision included within a more specific list should be read in context and limited to matters similar in type to those specifically enumerated. *Bates*, 406 S.W.3d at 545. Although JUSTICE JOHNSON's writing correctly observes that the statute's list of recreational activities is non-exclusive, he nevertheless reads the statute's "catchall" provision as far too inclusive. Subpart (L) does not "catch" an activity simply because it occurs outside.

JUSTICE JOHNSON further finds it illogical that the recreational use statute should cover bird-watchers without including sports spectators. But even bird-watching was arguably not a recreational activity under the statute until 1997, when it was expressly added to the existing nature-study activity.[11] We see nothing illogical about the Legislature's decision to include bird-watching as a covered recreational activity, but not spectating at outdoor sports stadiums. A landowner who allows a person to bird-watch opens his property for use in its natural state. The landowner does not build a stadium or otherwise make improvements for that purpose as in the case of organized-sporting activity.

JUSTICE JOHNSON argues, however, that the statute does not limit itself to natural conditions and therefore must also apply to improvements, such as the 12,500–seat stadium here. 459 S.W.3d at 64. But subpart (L), the provision he relies on to draw this stadium into the Act, refers to activities associated with the enjoyment of nature or the outdoors. "Nature" and the "outdoors" are synonyms, descriptive of "that part of the physical world that is removed from human habitation." THE MERRIAM–WEBSTER THESAURUS 472 (2005). Gathering together in a stadium to cheer a soccer team is not to remove oneself from human habitation but to embrace it; it is not the pursuit of nature but rather the celebration of organized human activity.

The recreational use statute was originally enacted to encourage landowners to open private land for natural pursuits.[12] A subsequent amendment extended the statute to public lands and additional amendments have perhaps moved beyond the original purpose, but the bird-watching amendment is not one of them. Bird-watching conforms with the statute's original purpose and provides no support for extending the statute to spectators at a sports stadium. Indeed, if the Legislature intended for the recreational use statute to apply generally to competitive sports and their spectators, the catchall provision is a curious choice as it apparently applies to some competitions but not others, that is, those played in open-air stadiums instead of enclosed facilities.

It is apparent from the statute's development that subpart (L)'s "catchall" was not intended simply to incorporate all other outdoor activities into the statute. Had that been the Legislature's intent, it would not have continued to add specific outdoor activities after adding the "catchall" in 1997. But subpart (L) must catch some unlisted activities; otherwise, it would have no purpose. In *City of Bellmead*, we concluded that it did catch the use of playground equipment because that was "the type of activity 'associated with enjoying ... the outdoors'" that the Legislature had in mind when it added subpart (L). *City of Bellmead*, 89 S.W.3d at 615 (quoting TEX. CIV. PRAC. & REM. CODE § 75.001(3)(L)).

---

11. Act of April 24, 1997, 75th Leg., R.S., ch. 56, § 1, 1997 Tex. Gen. Laws 123, 124 (amending "nature study" to include "bird-watching").

12. *See supra* text accompanying notes 3–4.

But if the statute applies to a park playground, why should it not also apply to a sports stadium and to parents watching their children play there? UTA argues that no difference exists between playgrounds and sports stadiums or between those who watch or play at either place because both activities are "associated with enjoying nature or the outdoors" within the meaning of subpart (L). We disagree.

■ While both activities are more likely than not to occur outside, their association with the enjoyment of nature or the outdoors is different. "The meaning of individual words 'may be ascertained by reference to words associated with them in the statute.'" *Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556, 566 (Tex.2014) (plurality op.) (quoting *Cnty. of Harris v. Eaton*, 573 S.W.2d 177, 181 (Tex.1978) (Steakley, J., dissenting)). "[W]here two or more words of analogous meaning"—such as "nature" and "the outdoors"—"are employed together in a statute, they are understood to be used in their cognate sense, to express the same relations and give color and expression to each other." *Id.* (quoting *Eaton*, 573 S.W.2d at 181). Because of its association with nature, "enjoying the outdoors" cannot include every enjoyable outside activity, as JUSTICE BOYD notes. *See* 459 S.W.3d at 61 (Boyd, J., concurring). It must also be associated with nature, or "that part of the physical world that is removed from human habitation." In this sense, the "outdoors" is not integral to the enjoyment of competitive sports because the focus of that activity is the competition itself, not where the competition takes place. In contrast, a park playground is not so much a celebration of organized human activity as it is a respite from it—a place where children can run, play, and otherwise enjoy the outdoors. The enjoyment of nature or the outdoors is thus a significant part of playground activity, but is not integral to the enjoyment of competitive sports. Although soccer may be played in an open-air stadium, a soccer game, as ordinarily understood, is not associated with nature in the sense indicated by the statutory definition of "recreation." Because the outdoors and nature are not integral to the enjoyment of this activity and because the activity is unlike the others the statute uses to define "recreation," we conclude that subpart (L)'s so-called "catch-all" does not catch this activity. *See* TEX. CIV. PRAC. & REM. CODE § 75.001(3) (listing the activities that define recreation under the statute).

UTA, however, cites cases from several other states purportedly holding that competitive sports and spectators are included as recreational pursuits under their respective statutes. *See, e.g., Catanzarite v. City of Springfield*, 32 Mass.App.Ct. 967, 592 N.E.2d 752, 752–53 (Mass.App.Ct. 1992) (noting that "active pursuits" like playing baseball and "passive pursuits" like watching baseball are covered by the statute); *see also Algave v. Mayor & City Council of Ocean City*, 5 F.Supp.2d 354, 355 (D.Md.1998) (playing soccer);[13] *Ambrose ex rel. Ambrose v. Buhl Joint Sch. Dist.*, 126 Idaho 581, 887 P.2d 1088, 1089 (Idaho Ct.App.1994) (playing baseball); *Lowman ex rel. Lowman v. Ind. Area Sch. Dist.*, 96 Pa.Cmwlth. 389, 507 A.2d 1270, 1273 (Pa.Commw.Ct.1986) (baseball spectator); *Brooks v. Northwood Little League, Inc.*, 489 S.E.2d 647, 651 (S.C.Ct. App.1997) (baseball spectator); *Miller ex rel. Fehring v. Wausau Underwriters Ins. Co.*, 260 Wis.2d 581, 659 N.W.2d 494, 497–98 (Wis.Ct.App.2003) (playing soccer). UTA submits that these cases "illustrate

**13.** This case does not apply Maryland's recreational use statute but instead holds that summary judgment was correctly rendered under principles of governmental immunity.

the way a recreational use statute is supposed to work."

What these cases illustrate to us, however, is that recreational use statutes throughout the country are neither uniform nor uniformly applied.[14] For example, Massachusetts, unlike Texas, does not attempt to define recreation but instead extends its statute's protection to any person "who lawfully permits the public to use such land for recreational, conservation, scientific, educational, environmental, ecological, research, religious, or charitable purposes without imposing a charge or fee therefor." MASS. GEN. LAWS ch. 21, § 17C(a). As already discussed, the ordinary meaning of the word "recreation" is sufficiently broad to include competitive sports and their spectators. Similarly, the Maryland statute defines "recreational purpose" as "any recreational pursuit" and extends coverage to land open "to the public for any recreational and educational purpose." MD. CODE ANN. NAT. RES. §§ 5–1101(g), 5–1102(a).

Pennsylvania's recreational use statute is more like our own, defining a "recreational purpose" to include "hunting, fishing, swimming, boating, . . . camping, picnicking, hiking, pleasure driving, nature study, water skiing, water sports, cave exploration and viewing or enjoying historical, archaeological, scenic, or scientific sites." 68 PA. STAT. ANN. § 477–2(3). And as UTA argues, an intermediate court in

that state has said that baseball should be included as a recreational purpose under Pennsylvania's statute. *Lowman*, 507 A.2d at 1273. The Pennsylvania Supreme Court, however, would seem to disagree, as it has limited the state's recreational use statute to land that remains largely in its natural state. *Mills v. Commonwealth*, 534 Pa. 519, 633 A.2d 1115, 1118 (Pa.1993); *see also Brown v. Tunkhannock Twp.*, 665 A.2d 1318, 1322 (Pa.Commw.Ct.1995) (recognizing that *Lowman* no longer controls). It has noted that the statute "was not intended to insulate owners of fully developed recreational facilities from the normal duty of maintaining their property in a manner consistent with the property's designated and intended use by the public." *Mills*, 633 A.2d at 1119.

Unlike the Massachusetts, Maryland, and Pennsylvania statutes, the Idaho statute includes "athletic competition" among its list of "[r]ecreational purposes," and the South Carolina statute lists "summer and winter sports" in its "[r]ecreational purpose" list. IDAHO CODE ANN. § 36–1604(b)(4); S.C. CODE ANN. § 27–3–20(d). Wisconsin's statute also mentions "outdoor sport" as a recreational activity but exempts certain organized team sports from the definition. WIS. STAT. § 895.52(1)(g).[15]

In contrast to these statutes, the Texas statute mentions only "water sports"

---

**14.** *See generally* Robin Cheryl Miller, Annotation, *Effect of Statute Limiting Landowner's Liability for Personal Injury to Recreational User*, 47 A.L.R.4th 262 (1986). For a complete list of recreational use statutes of the fifty states, see Elizabeth R. Springsteen & Rusty W. Rumley, *States' Recreational Use Statutes*, NAT'L AGRIC. L. CENTER, http://archive.nationalaglawcenter.org/assets/recreational use/index.html (last visited Mar. 13, 2015).

**15.** The Wisconsin statute states that a " '[r]ecreational activity' means any outdoor activity undertaken for the purpose of exercise, relax-

ation or pleasure [and] . . . includes . . . any other outdoor sport, game or educational activity [but] . . . does not include any organized team sport activity sponsored by the owner of the property on which the activity takes place." WIS. STAT. § 895.52(1)(g). The Wisconsin Supreme Court has said that despite this broad definition, "every outdoor activity is not a recreational activity" for purposes of the statute. *Minn. Fire & Cas. Ins. Co. v. Paper Recycling of La Crosse*, 244 Wis.2d 290, 627 N.W.2d 527, 533 (2001).

among its list of recreational activities.[16] The only other part of the statute that arguably associates recreational activity with any type of competitive sport is section 75.002(e). TEX. CIV. PRAC. & REM. CODE § 75.002(e). Section 75.002(e) adds certain hockey and skating activities, as well as soap box derby and paintball uses as recreational activities "if the activities take place on premises owned, operated, or maintained by a governmental unit." [17]

The hockey and skating activities were added in 1999, when the Legislature decided to extend the statute's protection to municipalities that provide a place for these activities, if they "take place *inside* a facility owned, operated, or maintained by a municipality." [18] The bill analysis at the time described these activities as "popular 'extreme sports.'"[19] In 2003, the Legislature amended the section to explain that the activities did not have to be indoors for the statute to apply; "inside a facility" was replaced with "on premises." [20] The liability limitation for these activities was further extended to any governmental unit and is thus no longer specific to municipalities.[21] Soap box derby and paintball uses were subsequently added.[22] But none of these amendments suggests that the Legislature intended to include competitive

sports and spectating as recreational activities under the statute.

Because we conclude that the recreational use statute does not apply to the activity in this case, we affirm the court of appeals' judgment.

Justice Guzman filed a concurring opinion, in which Justice Willett joined.

Justice Boyd filed a concurring opinion.

Justice Johnson filed an opinion, concurring in part and dissenting in part, in which Justice Brown joined.

Justice Guzman, joined by Justice Willett, concurring.

In *City of Bellmead v. Torres*, we held that whether the recreational use statute applies depends on the particular activity the plaintiff was engaging in at the time of the injury. Here, the plaintiff was injured while attempting to acquire and sign forms authorizing a high school to release her daughter after the conclusion of a high school soccer match. Under *City of Bellmead*, we must examine whether this particular activity qualifies as recreational use. Under the statute's plain language and our precedent, it does not. JUSTICE DEVINE's plurality opinion, however, departs from the precision our jurisprudence

---

16. TEX. CIV. PRAC. & REM. CODE § 75.001(3)(K). It may be that "disc golf," which was added to the list in 2005, is also a sport. *Id.* § 75.001(3)(N).

17. Section 75.002(e) provides:
(e) In this section, "recreation" means, in addition to its meaning under Section 75.001, the following activities only if the activities take place on premises owned, operated, or maintained by a governmental unit for the purposes of those activities:
(1) hockey and in-line hockey;
(2) skating, in-line skating, roller-skating, skateboarding, and roller-blading;
(3) soap box derby use; and.
(4) paintball use.

18. Act of May 20, 1999, 76th Leg., R.S., ch. 734, § 1, 1999 Tex. Gen. Laws 3345 (emphasis added).

19. *See* House Comm. on Civil Practices, Bill Analysis, Tex. H.B. 1058, 76th Leg., R.S. (1999.)

20. Act of May 23, 2003, 78th Leg., R.S., ch. 739, § 1, 2003 Tex. Gen. Laws 2171.

21. *Id.*

22. Act of May 27, 2005, 79th Leg., R.S., ch. 932, § 2, 2005 Tex. Gen. Laws 3178, 3179; Act of May 10, 2007, 80th Leg., R.S., ch. 227, § 1, 2007 Tex. Gen. Laws 315.

requires by focusing on the activity the plaintiff had completed before she was injured—spectating. Thus, while I join in the Court's judgment that the recreational use statute does not apply, I do so on different grounds. Accordingly, I respectfully concur in the Court's judgment.

Absent gross negligence, malicious intent, or bad faith, the recreational use statute protects property owners from claims for personal injuries that occur on their property during recreational activities. *See* TEX. CIV. PRAC. & REM. CODE § 75.002(d). In *City of Bellmead v. Torres,* we explained that the statute is a premises defect statute and, as a result, whether a particular action qualifies as "recreation" turns entirely on the precise activity the plaintiff was engaged in when the injury occurs. 89 S.W.3d 611, 614 (Tex.2002). Accordingly, we categorized the various exploits the plaintiff engaged in while at the park—playing softball and swinging on the swing—and then focused narrowly on the activity the plaintiff was performing when she was injured. *Id.* at 612, 614. In pinpointing the action that caused the injury, we disregarded both the reasons the plaintiff went to the park and the pursuits the plaintiff engaged in before the injury occurred. *Id.* at 612. *City of Bellmead* provides the framework for analyzing the applicability of the recreational use statute to the circumstances in this case: (1) what is the precise activity the plaintiff was engaged in when she was injured and (2) does that particular activity qualify as "recreation" under the statute?

There is no dispute that Sandra Williams had attended her daughter's high school soccer game at the University of Texas football stadium in Arlington and pursued that action to its conclusion without incident. However, per the high school's athletics policy, Williams's daughter could not leave the stadium with her family after the game until a parent signed a release form. Attempting to comply with school policy, Williams walked down the stadium's steps to the field after the game ended to gain access to the clipboard containing the form she needed to sign to leave the stadium with her child. In the process of acquiring the clipboard, Williams leaned on a gate that provides access from the stands to the field. The gate opened unexpectedly, and Williams fell five feet to the field below, injuring her rib and left arm. It defies logic to conclude Williams could have been a spectator when her injury occurred because the match had ended. Instead, at the time Williams was injured, she had fully transitioned to a new activity—acquiring and signing a release form in accordance with school policy.

Because Williams was injured while acquiring a release form, *City of Bellmead* requires us to determine whether this activity is "recreation." As defined by statute, "recreation" expressly includes: hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, cave exploration, water sports, bicycling, mountain biking, disc golf, dog walking, and radio control flying. TEX. CIV. PRAC. & REM. CODE § 75.001(3). None of these activities encompass the act of retrieving one's child after a school sporting event. *See id.* Thus, to be protected, the activity must fall within a catchall provision extending the definition of recreation to "any other activity associated with enjoying nature or the outdoors." *Id.* § 75.001(3)(L). To qualify as recreation, the principle of *ejusdem generis* requires the activity be similar to those sports and hobbies expressly identified in the statute. *Cf. City of Houston v. Bates,* 406 S.W.3d 539, 545 (Tex.2013). And in keeping with this principle, Texas precedent identifies a number of similar and thus qualifying recreational activities. *See, e.g., City of Bell-*

*mead,* 89 S.W.3d at 614–15 (swinging); *Univ. of Tex. Health Science Center v. Garcia,* 346 S.W.3d 220, 226 (Tex.App.–Houston [14th Dist.] 2011, no pet.) (playing beach volleyball); *Garcia v. City of Richardson,* No. 05–01–01755–CV, 2002 WL 1752219, at *2–3 (Tex.App.–Dallas July 30, 2002, pet. denied) (mem. op., not designated for publication) (playing an informal soccer game); *Kopplin v. City of Garland,* 869 S.W.2d 433, 441 (Tex.App.–Dallas 1993, writ denied) (playing on playground equipment). In stark contrast to these obvious recreational activities, the act of acquiring and signing a release form as a precursor to leaving the stadium with your child is not akin to the sports and hobbies expressly listed in the statute.

JUSTICE BOYD asserts that the Legislature defined recreation to broadly include activities that are incident to, but may not themselves qualify, as "enjoying nature or the outdoors." Op. at 60 (BOYD, J., concurring). I disagree. Construing the catchall provision to broadly encompass independent ancillary activities—such as signing a consent authorization form—does not comport with the principle of *ejusdem generis,* rendering the prior and subsequent statutorily enumerated activities superfluous. Rather, we must construe the catchall phrase no more broadly than the Legislature intended. *Bates,* 406 S.W.3d at 545.

The Legislature did not purport to incorporate an activity merely because its occurs outdoors. *See Sullivan v. City of Fort Worth,* No. 02–10–00223–CV, 2011 WL 1902018, at *7 (Tex.App.–Fort Worth May 19, 2011, pet. denied) (mem. op. on reh'g) (holding that a guest attending a wedding in a city garden was not engaged in recreation when she fell on an unlit pathway, reasoning that "[a] wedding is not the type of activity in which people engage assuming a risk of injury from

physical activity. Thus, we do not think that the wedding transforms from a ceremony to recreation simply because it occurred outside."). Nor did the Legislature intend to include activities that, while temporally related to a recreational activity, have no actual connection to an individual's enjoyment of nature or the outdoors. Instead, we must construe the catchall provision narrowly to encompass only those activities closely connected to enjoying the outdoors. *See* WEBSTER'S NEW UNIVERSAL ABRIDGED DICTIONARY 126 (1996) ("associate" means "usually accompanying"); WEBSTER'S NEW COLLEGIATE DICTIONARY 67 (1980) (defining "associate" as "closely connected."). Signing an authorization form, even when it occurs at an outdoor stadium, bears no relationship to activities associated with enjoying nature or the outdoors—Williams could just as easily have arrived at the stadium solely for the purpose of retrieving her child. In contrast, when the evidence indicates an activity is closely related to a recreational activity, the statute may apply. *See, e.g., City of Plano v. Homoky,* 294 S.W.3d 809, 817 (Tex.App.–Dallas 2009, no pet.) (falling in the clubhouse immediately after turning in a golf scorecard is closely related to playing golf). Because signing an authorization form is an activity unrelated to enjoying the outdoors, I cannot conclude that the Legislature intended that catchall provision to encompass this particular activity.

Because Williams was not engaged in recreation at the time of her injury, the recreational use statute does not bear on this dispute, and we need not address whether spectating, in and of itself, is a recreational use. Thus, I concur only in the Court's judgment.

Justice Boyd, concurring.

Legend has it that Midas secured his father's ox cart to a hitching post in an-

**60**

cient Phrygia using a knot that only the future king of all of Asia could untie. The insoluble Gordian Knot held fast for centuries, and even Alexander the Great could not unwind its woven strands of bark.[1] I think Midas would have been quite proud of the Texas recreational use statute and its definition of the word "recreation." TEX. CIV. PRAC. & REM. CODE §§ 75.001(3), .002(e).

The Court makes a valiant effort to determine what qualifies under the statute as "any other activity associated with enjoying nature or the outdoors." *Id.* § 75.001(3)(L). For the reasons JUSTICE DEVINE explains in the plurality opinion, I agree that the doctrine of *ejusdem generis* requires us to construe that phrase to include only activities that are "similar in type" to the specific activities the statute lists. *Ante* at 52. But the plurality never defines what that "type" is, nor can it, because it is not possible to fit all of the listed activities into any particular "type." I agree with JUSTICE JOHNSON that we cannot say, as the plurality seems to suggest, that the "type" of activities listed are only those that:

— use the property "in its natural state," *ante* at 56, because the statute expressly defines "premises" to include "buildings" and "structures"[2] and lists several activities that often involve improvements like pools (swimming), cabins (camping), ramps (boating), tables (picnicking), and roads ("pleasure driving" and bicycling);[3]

— are not a sport, or a team sport, or even a competitive team sport, *ante* at 56, because the list includes several activities that can be all of these, like fishing, swimming, boating, water sports, bicycling, and disc golf;[4]

— do not involve "spectating," *ante* at 54, because the list includes "bird-watching" and other activities in which much of the enjoyment often derives from what the participant observes, like boating, camping, picnicking, hiking, pleasure driving, and cave exploration;[5] or

— focus on "that part of the physical world that is removed from human habitation," *ante* at 55, as opposed to a "celebration of organized human activity," *ante* at 55, because the list includes activities that are often enjoyed among groups of people and in areas where

1. *See, e.g., Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.,* 154 F.3d 812, 818 n. 3 (8th Cir.1998) (citing FUNK AND WAGNALLS STANDARD DICTIONARY OF FOLKLORE, MYTHOLOGY, AND LEGEND 460 (Maria Leach ed., Funk & Wagnalls 1972) and BULFINCH'S MYTHOLOGY 44 (Richard P. Martin ed., 1991)); Carl Michael Szabo, *Thwack!! Take That, User–Generated Content!: Marvel Enterprises v. NCSoft,* 62 FED. COMM. L.J. 541, 543 n.6 (2010) (citing Lynn E. Roller, *Midas and the Gordian Knot,* 3 CLASSICAL ANTIQUITY 256 (1984)); Jim Chen, *The Midas Touch,* 7 MINN. J.L. SCI. & TECH. i nn.1–2 (2005) (citing THOMAS BULFINCH, BULFINCH'S MYTHOLOGY: ILLUSTRATED EDITION 46–48 (1979) and 2 W.W. TARN, ALEXANDER THE GREAT 262 (1948)); Joseph H. King, Jr., *The Misbegotten Libel–Proof Plaintiff Doctrine and the "Gordian Knot" Syndrome,* 29 HOFSTRA L. REV. 343, 343–44 (2000) (citing Zbigniew Herbert, *The Gordian Knot,* KENYON REV. 34 (Summer 1984) (John Carpenter & Bogdana Carpenter trans.)); Edward J. Imwinkelried, *The Gordian Knot of the Treatment of Secondhand Facts Under Federal Rule of Evidence 703 Governing the Admissibility of Expert Opinions: Another Conflict Between Logic and Law,* 3 U. DENV. CRIM. L. REV. 1, 28 (2013) (citing JOHN MAXWELL O'BRIEN, ALEXANDER THE GREAT: THE INVISIBLE ENEMY: A BIOGRAPHY 69 (1992)).

2. TEX. CIV. PRAC. & REM. CODE § 75.001(2).

3. *Id.* § 75.001(3)(C)–(F), (H), (M).

4. *Id.* § 75.001(3)(B)–(D), (K), (M)–(N).

5. *Id.* § 75.001(3)(D)–(J).

people live and gather, like dog-walking, hockey, and roller-skating.[6]

Despite the plurality's admirable efforts, it is simply not possible to describe a "type" of activity that includes things as varied as swimming, disc golf, dog-walking, and hockey, but does not include every activity "associated with enjoying nature or the outdoors"—which would include spectating at an outdoor competitive sporting event.

I am therefore sympathetic to JUSTICE JOHNSON's conclusion that "[t]he Legislature has not specified that ... the activities must be for enjoying the outdoors in limited, certain ways[.]" *Post* at 66. But I cannot reach that conclusion because it ignores both the rule of *ejusdem generis* and the reality that people can enjoy doing almost *anything* outdoors. Applying the rule of *ejusdem generis,* I cannot conclude that "recreation" includes eating on the patio at a local restaurant, walking from one store to the next at an outlet mall, or driving to work with the top down or windows open, even though "enjoyment of nature or the outdoors" is "integral to the enjoyment of th[e] activity." *Ante* at 55. Nor could I conclude that a person who "enjoys" mowing the lawn is engaged in "recreation" but a person who considers it to be an undesirable chore is not. Like the plurality, I conclude that the statute limits the meaning of "recreation," but like JUSTICE JOHNSON, I conclude that the statute provides no clear guidance as to what those limits are.

JUSTICE GUZMAN, meanwhile, would narrow our focus from the broader purpose of the outing to "the particular activity the plaintiff was engaging in at the time of the injury." *Ante* at 57. Although the plaintiff in this case was at a stadium to watch her daughter play soccer, she was actually injured "while attempting to acquire and sign forms authorizing a high school to release her daughter" after the game had ended. *Ante* at 57. Our decision in *City of Bellmead v. Torres* provides some support for JUSTICE GUZMAN's conclusion that we must focus on the more narrow activity, 89 S.W.3d 611, 614 (Tex. 2002), but the statute does not support her application of that principle here. In my view, JUSTICE GUZMAN's application of *Bellmead* ultimately ignores both the statute's reference to any activity "associated with" enjoying the outdoors and the reality that every "recreational" activity includes more mundane actions that are only "incident to" or "temporally related to," *ante* at 59, but may not themselves qualify as, "enjoying nature or the outdoors." I would conclude, for example, that a camper is still camping when he's walking to the park office to renew his permit to stay another night, a boater is still boating when she's tying the boat up to the dock, and a hunter is still hunting when he's climbing out of the blind to grab another drink from the cooler, even though these are only "temporally related," rather than "closely connected," and may "have no actual connection to an individual's enjoyment of nature or the outdoors." *Ante* at 59.

Each of my colleagues' opinions in this case represents a diligent and reasoned effort to make sense of the recreational use statute, but I ultimately conclude that the statute cannot be sensibly applied, at least without the aid of additional canons of statutory construction. Alexander the Great himself could not figure this one out. Instead, I suspect he would do what legend says he did with Gordian's Knot: he would unsheathe his sword and be done with it.[7]

---

6. *Id.* §§ 75.001(3)(O), 75.002(e)(1), (2).

7. *See supra* note 1.

Fortunately, we have a sword that is custom-made for a statute like this one. As we have repeatedly explained, "if a statute . . . deprives a person of a common law right, the statute will be strictly construed in the sense that it will not be extended beyond its plain meaning or applied to cases not clearly within its purview." *Satterfield v. Satterfield*, 448 S.W.2d456, 459 (Tex.1969).[8] "Of course, statutes can modify common law rules, but before we construe one to do so, we must look carefully to be sure that was what the Legislature intended." *Energy Serv. Co. of Bowie v. Superior Snubbing Servs., Inc.*, 236 S.W.3d 190, 194 (Tex.2007). Because statutes abrogating common law causes of action are disfavored, we will apply them only when there is "a clear repugnance between the common law and statutory causes of action." *Cash Am. Int'l Inc. v. Bennett*, 35 S.W.3d 12, 16 (Tex.2000).

As the plurality notes, the recreational use statute "effectively immunizes the landowner or occupant from ordinary negligence claims[.]" *Ante* at 49. Because the statute deprives invitees of their common law right to recover for injuries caused by a landowner's negligence, and instead permits them to recover only upon proof of gross negligence, malicious intent, or bad faith, *see* Tex. Civ. Prac. & Rem. Code § 75.002(d), we must strictly construe it and apply it only to cases that are "*clearly* within its purview." *Satterfield*, 448

S.W.2d at 459 (emphasis added). As the Court's varying opinions here demonstrate, this case is not "clearly within [the] purview" of the statute. I would therefore hold that the statute does not apply. I would not hold, however, that the statute can *never* apply to a case involving an activity that the statute does not list as an example of "recreation." It may be, for example, that jogging, rock-climbing, or repelling "clearly [fits] within [the] purview" of an "activity associated with enjoying nature or the outdoors," as limited by the doctrine of *ejusdem generis*, but we cannot decide that issue here. What we must decide here is whether spectating at a soccer game or retrieving a child after the game fits that description, and since it does not do so clearly, I would hold that the statute does not apply.

I must address one final point, however, regarding a different "sword" that potentially clashes with the one I apply here. When, as here, the defendant is a governmental unit that enjoys sovereign immunity, *see Univ. of Tex. Health Sci. Ctr. at San Antonio v. Bailey*, 332 S.W.3d 395, 397 n. 5 (Tex.2001) ("State universities and their component entities are governmental entities within the meaning of the Texas Tort Claims Act."), the recreational use statute limits the scope of the Tort Claims Act's waiver of immunity. *See* Tex. Civ. Prac. & Rem. Code §§ 101.021(2) (providing that governmental units are liable for "personal injury and death so caused by a

---

8. *See Sw. Bell Tel., L.P. v. Harris Cnty. Toll Rd. Auth.*, 282 S.W.3d 59, 64 (Tex.2009); *Smith v. Sewell*, 858 S.W.2d 350, 354 (Tex. 1993); *Dutcher v. Owens*, 647 S.W.2d 948, 951 (Tex.1983). Justice Johnson declines to apply this canon of construction in part because no party has argued "a question of the . . . statute's constitutionality or the effect of its impairment of a common law right." *Post* at 67. But this canon does not apply only when there are constitutional challenges, and

it is the proper practice of this Court to rely on applicable canons whenever we "cannot discern legislative intent in the language of the statute itself." *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 639 (Tex.2010). A party does not "waive" the applicability of a canon of construction by failing to raise it, and if our goal is to correctly determine the meaning of an ambiguous statute, we cannot refuse to rely on our guiding principles simply because no one asks us to do so.

condition or use of ... real property"), 101.025(a) (waiving immunity "to the extent of liability created by this chapter"), 101.058 (providing that the recreational use statute controls "[t]o the extent that [it] limits the liability of a governmental unit under circumstances in which the governmental unit would be liable"). In this sense, the recreational use statute defines the extent of the waiver of immunity, and "[w]e have repeatedly affirmed that any purported statutory waiver of sovereign immunity should be strictly construed in favor of retention of immunity." *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 513 (Tex.2012). It could thus be argued that we should construe and apply the statute *broadly*, rather than narrowly, to minimize the extent of the statutory waiver and maximize the extent to which the governmental unit retains its immunity. *Cf. In re Smith*, 333 S.W.3d 582, 587 (Tex.2011) (explaining that "a statutory waiver of sovereign immunity must be construed narrowly" and "must be clear and unambiguous") (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex.2008); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 697 (Tex. 2003);TEX. GOV'T CODE § 311.034).

I conclude, however, that the canon we announced in *Satterfield* prevails here for at least three reasons. First, we are construing the recreational use statute in this case, not the Tort Claims Act, and because the recreational use statute applies to all owners, lessees, and occupants of real property, including private parties as well as governmental units, *see* TEX. CIV. PRAC. & REM. CODE §§ 75.002(a), .003(c), its primary effect is to abrogate a common law cause of action. Creating an exception to the Tort Claims Act's waiver of sovereign immunity is only a secondary effect resulting from that Act's incorporation of the statute by reference. Second, the recreational use statute expressly states that it

does not "create liability" or "waive immunity," and that it controls over any conflict with the Tort Claims Act. *See id.* § 75.003(d), (f). And third, in my view, the canon of construction that requires courts to narrowly construe a statute that waives immunity does not also require courts to broadly construe separate statutes that provide exceptions to the waiver as a secondary effect.

In summary, consistent with our well-established canons of construction, I would hold that the recreational use statute does not apply here because it deprives the claimant of a common law right and the claimant's activities at issue here are not "clearly within [the statute's] purview." I thus concur in the Court's judgment affirming the court of appeals' judgment, but for the different reasons I have explained.

Justice Johnson, joined by Justice Brown, concurring and dissenting.

I concur in the Court's judgment as to the Williamses' gross negligence claim, but for two reasons I dissent from its judgment as to their ordinary negligence claim. The first reason I dissent is based on the language of the recreational use statute by which JUSTICE DEVINE reaches his decision in his plurality. The second, which should be the first because it implicates the University of Texas at Arlington's (UTA) immunity but which is not addressed by the plurality, is based on the interaction of the recreational use statute and the Texas Tort Claims Act as noted by JUSTICE BOYD in his concurring opinion. TEX. CIV. PRAC. & REM. CODE §§ 75.002 (recreational use statute), 101.021(2) (Tort Claims Act).

As to the first reason I dissent–the language of the statute—the recreational use statute includes *bird watching* among several activities listed as being "recreation." *Id.* § 75.001(3)(I). Yet, despite the statute

specifying that "recreation" includes persons engaged in outdoor activities "such as" the listed activities and separately specifying that it also includes persons engaged in "any other activity associated with enjoying nature or the outdoors," *id.* § 75.001(3)(L), the plurality concludes that the Legislature intended that a parent engaged in outdoor *child* watching and associated activities is not included. 459 S.W.3d 48, 51. The language of the statute does not support this conclusion; the principle of *ejusdem generis* does not support it; and I do not believe the Legislature intended it.

The plurality identifies the issue in this appeal as "whether the statutory term 'recreation' reasonably includes competitive sports and their spectators" when those subjects are not listed in the recreational use statute, and concludes that it does not. *Id.* at 51. In reaching this conclusion, the plurality notes that words in a statute are generally interpreted according to their common meaning unless a contrary intention is apparent from the statute's context. *Id.* at 52 (citing *City of Houston v. Bates,* 406 S.W.3d 539, 544 (Tex.2013)). The plurality recognizes that applying "recreation's" ordinary broad meaning—refreshment from work or a diversion—would include both competitive sports and spectating within its scope. *Id.* (citing WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 985 (1984)). The plurality nevertheless concludes that this definition should not be applied because the Legislature defined "recreation" more precisely through a list of activities, and those do not include the activities of a mother who watched her daughter's soccer game and then was injured when a gate swung open while she was in the process of waiting for and signing her daughter out after the game. *Id.* at 49. I disagree with that conclusion.

The recreational use statute specifies that the term "recreation" means activities "such as" those it lists, clearly indicating legislative intent that the list is non-exclusive. TEX. CIV. PRAC. & REM. CODE § 75.001(3). The statute then enlarges even on its broadly inclusive "such as" language by providing in a discrete subdivision that "recreation" means an activity "such as ... *any other activity associated with enjoying nature or the outdoors.*" *Id.* § 75.001(3)(L) (emphasis added). Not surprisingly, this Court has construed that language as reflecting legislative intent for the statute to encompass activities not specifically listed, including swinging on a swing. *City of Bellmead v. Torres,* 89 S.W.3d 611, 615 (Tex.2002). In *City of Bellmead* the Court said that "[w]hile the Recreational Use Statute does not specifically list swinging as an example of recreation, it is certainly within the type of activity 'associated with enjoying ... the outdoors.'" *Id.* But according to the plurality, *City of Bellmead* does not control here because "[t]he enjoyment of nature or the outdoors is thus a significant part of playground activity, but is not integral to the enjoyment of competitive sports." 459 S.W.3d at 55. The plurality attempts to distinguish enjoying "nature" and the "outdoors" from organized soccer by saying that "nature" and "outdoors" equate to that part of the world removed from human habitation, while gathering in a stadium to watch soccer is not removing oneself from human habitation, but rather celebrating and embracing it. But there is no contention or evidence that Williams either was *in,* or would have been in, UTA's stadium or by the gate where she fell, independent of her daughter's activities. What Williams was embracing was not human habitation, but her daughter's participation in outdoor athletic activities, just as parents embrace their children's participation in all the outdoor activities listed in

the statute. A parent's enjoyment of nature or the outdoors for the activities of visiting a playground with a child or going boating, camping, picnicking, hiking, or waterskiing with a child is hard to differentiate from what Williams was doing when she was injured: participating to the extent she could in her daughter's outdoor activities.

The plurality also distinguishes Williams's attending her daughter's soccer game in a stadium from a parent's attending a child's playdate at a playground by implicitly categorizing playing—and spectating—at a playground as enjoying "nature" which the plurality says is "that part of the physical world that is removed from human habitation." 459 S.W.3d at 54. But by doing so, the plurality ignores the reality that most playgrounds are designed to be in, and are constructed in or close to, areas inhabited by humans; otherwise the playground improvements would not be fully enjoyed and used.

The plurality points to no language in the statute differentiating between competitive and non-competitive activities. That is because nothing in the statute demonstrates legislative intent to single out and exclude competitive sports from its reach. Moreover, several of the listed activities such as fishing, swimming, boating, off-road driving, water sports, bicycling, disc golf, and radio-controlled airplane flying typically *include* both non-competitive and competitive aspects.

Finally, the statute does not contain any language differentiating team sports and activities from non-team sports and activities. And certainly many of the listed activities such as swimming, bicycling, water sports, boating, and fishing include team competitions. To be sure, some teams may have two or three members, some may have five or six members, and others may have ten or eleven members or

more. But it is simply part of the human experience for leisure-time activities to induce competitions, and competitions inevitably lead to teams. And the statute does not exclude either from its broad language.

As to Williams being a spectator or picking her daughter up after the game, the Legislature could hardly have intended to include only adult participants in activities covered by the statute without at least some language in the statute saying so. Yet that would be the effect of excluding parents and other persons who make children's participation in outdoor activities possible. Parents and adults typically take children to their activities, sign them in, and remain to mix and mingle with other parents while enjoying the outdoor activities as much as (and possibly more than) the children, then sign the children out and pick them up to take them home— just the type of activity in which Williams was engaged. To hold that Williams is excluded because she was either a spectator as to her daughter's outdoor sports activities or in the process of picking her daughter up after the game, both of those being activities closely "associated with" the daughter's soccer game, reads the language of § 75.001(3)(L) out of the statute. The holding effectively means that the statute does not cover parents engaging in activities associated with their children's participation in outdoor sports, such as taking the children to practices, games, and even simple play dates at a park where there are swings and other improvements for the children to enjoy, along with signing them in or out of those activities as part of a security process, or sitting in stands or standing around the field spectating and socializing with other parents and participants (and occasionally offering coaching advice) while waiting to take their children home.

The plurality argues that spectating at organized sporting activities is distinguishable from bird watching because the landowner who opens property for bird watching opens the property in its natural state and does not build a stadium or otherwise make improvements for that purpose. But nothing in the statute says or indicates that it applies only when land is in a natural state without improvements. Here, Williams's injury was caused by an improvement to UTA's land—a gate that swung open. Land that is fit for, and open for, birdwatching, hunting, camping, swimming, cycling, and other activities listed in the recreational use statute will almost invariably have some type of improvements, including fences, gates, and swings. The plurality's narrowing of the statute by effectively reading words into it will bring into question the statute's application to injuries causally related to various types of improvements to land even though the activities are otherwise covered by the statute. So in my view, the fact that UTA's property included improvements and the Williamses' claims arose from one of them, does not exclude the claim based on language in the statute. Nor is it a distinguishing factor from the activities listed any more than the statute distinguishes children playing soccer from children swimming, diving from various heights of diving boards, or playing water polo in teams at an outdoor swimming pool—surely an improvement to a premises—or children at a lake beach area cordoned off for swimming and water sports, and the parents who take them there, sign them in and out, and watch over them.

Simply put, people enjoy many kinds of outdoor activities in different ways, in individual, group and team activities, in non-competitive and competitive activities, and even in different types of weather. The activities for the most part take place on land that has improvements and the activities frequently have associated requirements such as registering, signing in and out, and in the case of children, having parents or responsible adults perform those requirements. The Legislature has not specified that in order for activities to come within the recreational use statute, the activities must be for enjoying the outdoors in limited, certain ways such as non-competitive, non-team activities, or on land with limited or no improvements. The statute only specifies that the activity must be recreational "such as" in the ways listed in the statute, including the specific subsection specifying "any other activity associated with enjoying nature or the outdoors." TEX. CIV. PRAC. & REM. CODE § 75.001(3)(L). The plurality narrows the scope of what it concedes is broad statutory language. But narrowing the scope of statutory language, even if it is as broad as the language in § 75.001(3)(L), is not a judicial prerogative. This Court has explicated simple rules for reading language into or out of a statute—to effect clear legislative intent, or to avoid a statute's having an arbitrary, absurd or nonsensical effect. *See Union Carbide Corp. v. Synatzske*, 438 S.W.3d 39, 54 (Tex.2014) (interpreting a statutory testing requirement to include a relevance requirement not included in the statutory language in order to yield a non-arbitrary, non-absurd result); *City of Rockwall v. Hughes*, 246 S.W.3d 621, 630 (Tex.2008) ("[C]hanging the meaning of the statute by adding words to it, we believe, is a legislative function, not a judicial function."). In my view there is no need to read words into or out of the recreational use statute to effect clear legislative intent or to avoid an arbitrary, absurd, or nonsensical result.

JUSTICE BOYD raises two issues that bear addressing. As to the first, he concludes that different canons of statutory construction should be used to decide the issue

because the recreational use statute's primary purpose is to abrogate or impair a common law cause of action. Without addressing the merits of his reasoning, I disagree with this approach procedurally because the question of the recreational use statute's constitutionality or the effect of its impairment of a common law right was not raised in the lower courts, has not been raised, briefed, or argued by the parties here, and is not an issue properly raised by the Court sua sponte. I would not decide the case on an argument not made by the Williamses without at least identifying the issue and requesting supplemental briefs so UTA has an opportunity to address it, which the Court has not done.

As to the second, which is the second reason I dissent, JUSTICE BOYD observes that the question of the interaction of the recreational use statute with the Williamses' common law cause of action is complicated by the fact that UTA's immunity—an issue implicating subject matter jurisdiction which we must raise sua sponte even if not raised by the parties—would shield it from the claim but for the Tort Claims Act's waiver of immunity. The complication arises because the recreational use statute specifies that it prevails over the Tort Claims Act to the extent of any conflict. TEX. CIV. PRAC. & REM. CODE § 75.003(g). The recreational use statute precludes the Williamses' ordinary negligence claim against UTA that would otherwise be allowed by the Tort Claims Act *if* the recreational use statute encompasses the claim. As amply demonstrated by the opinions in this matter, whether the claim is encompassed by the recreational use statute is at best unclear, and the Legislature has instructed that a statutory waiver of immunity must be clear and unambiguous in order to be effective. TEX. GOV'T CODE § 311.034. So, even if the plurality is correct in interpreting how the recre-

ational use statute would apply if UTA did not have immunity, the statutory interaction compels a different result as to the Williamses' ordinary negligence claim because UTA's immunity for that type of claim has not been clearly and unambiguously waived.

I would hold that the recreational use statute applies to the Williamses' ordinary negligence claim, would reverse the court of appeals' judgment as to that claim, and dissent from the Court's judgment otherwise. However, I agree with the court of appeals' analysis and holding regarding the claim that UTA was grossly negligent and join the Court's judgment affirming the appeals court's remand of the gross negligence claim to the trial court.